* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer/employee relationship existed between the plaintiff-employee and defendant-employer on August 11, 1998.
3. The parties stipulated into evidence as Stipulated Exhibit 1 the following documents: (1) North Carolina Industrial Commission forms; (2) the medical records for plaintiff; (3) Heartfelt Motors transaction and check detail reports from January 1, 2005 through April 15, 2005; (4) plaintiff's answers to defendants' fourth set of Interrogatories; (5) plaintiff's response to employer's Notice of Termination of Compensation by Reason of Trial Return to Work; (6) defendants' letter to Executive Secretary Weaver in response to plaintiff's motion dated August 29, 2005; (7) the Order of Executive Secretary Weaver dated September 8, 2005; (8) copies of plaintiff's workers' compensation checks from January 1, 2005 through July 25, 2005; and (9) the written statement of Tina Bonilla.
4. The following documents were also admitted into evidence:
 a. Plaintiff's Exhibit #1 — Copies of checks to Plaintiff from Heartfelt Motors;
 b. Defendants' Exhibit #1 — June 15, 2005 written statement of JoAnne Bolen, made to insurance adjuster regarding the Plaintiff (entered into evidence at the contempt hearing)
 * * * * * * * * * * * EVIDENTIARY RULING
Prior to the hearing before the Full Commission, plaintiff filed a Motion to Supplement the Record on Appeal. Defendants, in their Brief to the Full Commission, object to plaintiff's *Page 3 
Motion. Having considered the positions of both parties, the Full Commission addresses the issues raised in plaintiff's Motion within this Opinion and Award.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On August 11, 1998, while working for defendant-employer, plaintiff injured her back as the result of slipping in mud. Defendants accepted plaintiff's claim as being compensable and began paying her temporary total disability ("TTD") benefits in the amount of $266.68 per week beginning on August 25, 1998.
2. Plaintiff received TTD benefits from August 25, 1998 until July 31, 2005 when, pursuant to a Form 28T filed by defendants, plaintiff's temporary total disability benefits were terminated based on information obtained by defendants. The information received indicated that plaintiff had returned to income producing work.
3. On September 8, 2005 Executive Secretary Weaver entered an Order, ordering defendants to reinstate payment of plaintiff's TTD benefits retroactive to July 31, 2005 pending further Order of the Industrial Commission.
4. On September 16, 2005, defendants filed a Form 33 appealing Executive Secretary Weaver's Order and requested a full evidentiary hearing on the issue of whether plaintiff had returned to work while simultaneously receiving workers' compensation benefits.
5. Each check that was received by plaintiff between August 25, 1998 and thereafter contained the following language as required by North Carolina Industrial Commission Rule 901:
 By endorsing this check, I certify that I have not worked for or *Page 4 
earned wages from any business or individual during the period covered by this check, or that I have reported any earning to the employer/carrier paying the workers' compensation benefits. I understand that making a false statement by endorsing this benefit check may result in civil or criminal penalties.
6. Plaintiff endorsed every check received from defendant-carrier directly above the above-referenced language, which was printed on each TTD benefit check, certifying that she was neither employed, nor receiving any compensation from any business or individual as of the date of each endorsement.
7. On May 12, 2005, defendants sent plaintiff a Form 90 report of earnings request which covered the period of time from August 11, 1998 through May 10, 2005. The Form 90 contained the following questions: (1) Did you receive earnings from work during the time period indicated; and (2) Did you work for a business or any person during that time? Plaintiff answered "No" to both questions contained on the Form 90.
8. On or about June 15, 2005, defendants were informed by Tina Bonilla that plaintiff had been working with, and receiving compensation from, Heartfelt Motors while receiving TTD benefits from defendants.
9. Ms. Bonilla subsequently gave a written statement summarizing plaintiff's employment with Heartfelt Motors. Ms. Bonilla's statement indicated that plaintiff had been employed by Heartfelt from approximately February 16, 2005 through April 2005. She ran errands, answered the phone, prepared receipts, and called banks regarding loan approvals for customers. Furthermore, in her statement, Ms. Bonilla indicated that she was instructed to write checks to plaintiff as office expenses due to the fact that she was receiving workers' compensation benefits. However, Ms. Bonilla's hearing testimony conflicted with her prior written statement. At the hearing before the Deputy Commissioner, Ms. Bonilla testified that the checks written to *Page 5 
plaintiff were for supplies that plaintiff picked up for Heartfelt Motors and that the checks were not considered payroll for work plaintiff had performed. Additionally, Ms. Bonilla testified that she had written the earlier statement to defendants in an effort to "get back at" plaintiff for a misunderstanding the two of them had experienced in their friendship. The undersigned find that Ms. Bonilla is not credible. Accordingly, no weight is assigned to her written statement or her testimony before the Deputy Commissioner.
10. Angela Dutton, who was General manager of Heartfelt Motors from 1999 through 2003, also testified that plaintiff was employed by Heartfelt. Ms. Dutton testified that plaintiff would run errands, pick up work from the Department of Motor Vehicles, and drive cars to and from auctions. In addition, Ms. Dutton testified that in her capacity as General Manager of Heartfelt, she wrote checks made payable to plaintiff as payment for performing the aforementioned services.
11. Robert Miller also testified that plaintiff worked for Heartfelt Motors. According to Mr. Miller, plaintiff did data entry, made bank deposits, picked up checks and titles from auctions and traveled to and from the Department of Motor Vehicles. He also testified that "when plaintiff came in and did some work, this is what she was paid for."
12. Additionally, Mary Beth Phy and Patricia Lanier of the High Point, North Carolina Department of Motor Vehicles office testified that they considered plaintiff to be the "face of" Heartfelt Motors at their office and that plaintiff would come to their office between one and two times per week beginning in late 2004 through the early part of 2005.
13. A contempt hearing was held on August 28, 2006 based on defendants' Show Cause Motion for JoAnne Bolen's refusal to comply with an order of the Industrial Commission. At the call of the case for hearing, defendants moved to withdraw their motion, as Ms. Bolen was *Page 6 
present in the courtroom and offered her testimony.
14. JoAnne Bolen's testimony during the contempt hearing is consistent with her prior written statement offered to defendants. She indicated that plaintiff worked for Heartfelt Motors and received payment for her work during the period of time in which she received workers' compensation benefits. Additionally, Ms. Bolen indicated that plaintiff's original injury was not workers' compensation related, and that plaintiff had injured herself at a swimming pool while doing non-work related activities. Ms. Bolen indicated that she gathered this information during a conversation held between plaintiff, Keith Bolen and Jerry Springs.
15. Plaintiff testified that she went to Heartfelt Motors everyday and that while there she ran errands, verified loans, and traveled to the Department of Motor Vehicles. Furthermore, she did not dispute the fact that she had received checks from Heartfelt Motors made payable to her totaling at least $2,200.00.
16. The undersigned find the testimony given by Angela Dutton, Robert Miller, Patricia Lanier and Mary Beth Phy to be credible. Their testimony along with the admissions made by plaintiff at the hearing before the Deputy Commissioner, establishes that on or before February 16, 2005, and continuing through at least April 2005, plaintiff was employed by Heartfelt Motors during which time she was compensated at least $2,200.00 for performing various job responsibilities including filling out receipts, running errands, verifying loans with banks, and traveling to and from the Department of Motor Vehicles to pick up titles and plates. The Full Commission finds the same as fact.
17. The Full Commission further finds, that between February 16, 2005 and April 2005, plaintiff received and endorsed the TTD benefits checks from defendants, despite the fact that she was being compensated by Heartfelt Motors during the same time period. *Page 7 
18. Defendants are entitled to receive a credit in the amount of $2,200.00 from plaintiff, which represents the amount of compensation she received from Heartfelt Motors while also receiving TTD benefits from defendants.
19. There is insufficient evidence that plaintiff pursued this hearing based upon stubborn, unfounded litigiousness.
20. This matter is being referred to the Industrial Commission's Fraud Section for further investigation.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff directly violated N.C. Gen. Stat. § 97-88.2 by falsely representing that she was not employed during the time period she was receiving TTD benefits from defendants. The competent evidence of record establishes that she was employed from at least February 16, 2005 through April 2005, and received at least $2,200.00 from Heartfelt Motors while simultaneously receiving TTD benefits from defendants.
2. Defendants are entitled to receive a credit in the amount of $2,200.00 from plaintiff. This represents the amount of compensation she received from Heartfelt Motors while also receiving TTD benefits from defendants. N.C. Gen. Stat. § 97-42.
3. Due to there being insufficient evidence that plaintiff pursued this hearing based upon stubborn, unfounded litigiousness, defendants are not entitled to attorney's fees pursuant to N.C. Gen. Stat. §97-88.1.
4. Pursuant to N.C. Gen. Stat. § 97-88.2, this matter is being referred to the Industrial *Page 8 
Commission's Fraud Section.
5. During the pendency of the fraud investigation, defendants are entitled to suspend payment of all benefits to plaintiff.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff shall reimburse defendants in the amount of $2,200.00, which represents the amount of compensation she received from Heartfelt Motors while at the same time receiving TTD benefits.
2. Defendants shall suspend payment of all benefits as of the date of this Opinion and Award and continuing during the pendency of the fraud investigation.
3. The costs of this action shall be taxed against the plaintiff.
This the 26th day of February, 2008.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 9 
 S/___________________ PAMELA T. YOUNG CHAIR
 *Page 1